BARBARA K. PHILLIPS, Plaintiff-Appellant v. WINSTON-SALEM/FORSYTH COUNTY BOARD OF EDUCATION and LARRY D. COBLE, Defendants-Appellees

No. 9321SC961

(Filed 6 December 1994)

## 1. Libel and Slander § 19 (NCI4th)— statements to school superintendent—qualified privilege

Statements made by defendant board of education's communications officer to the superintendent concerning alleged actions by plaintiff assistant superintendent in attempting to have the superintendent's office broken into and directing janitors to search the superintendent's trash for information which might embarrass him were protected by a qualified privilege since the communications officer had an interest in reporting any conduct to the superintendent which could adversely affect the school system. Therefore, a directed verdict was properly entered for defendant school board where no malice was shown.

**Am Jur 2d, Libel and Slander §§ 195 et seq., 444.**

**Pleading or raising defense of privilege in defamation action. 51 ALR2d 552.**

PHILLIPS v. WINSTON-SALEM/FORSYTH COUNTY BD. OF EDUC.

[117 N.C. App. 274 (1994)]

**2. Libel and Slander §§ 19, 42 (NCI4th)— statement to newspaper editor—no qualified privilege—not defamatory**

Although qualified privilege did not apply to a statement made by defendant board of education's communications officer to a newspaper editor, when asked about alleged actions of plaintiff assistant superintendent in attempting to have the superintendent's office broken into and directing janitors to search the superintendent's trash for embarrassing information, that "You'd be surprised about what went on around here," this statement was not defamatory as a matter of law.

**Am Jur 2d, Libel and Slander §§ 195 et seq., 444.**

**Pleading or raising defense of privilege in defamation action. 51 ALR2d 552.**

**3. Schools § 175 (NCI4th)— statements by school board member—board not liable**

Defendant board of education was not vicariously liable for statements made by its vice chairman to a newspaper editor concerning alleged conduct by plaintiff assistant superintendent where the vice chairman was not acting as an agent of the board when he made the statements.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 184 et seq.**

**Tort liability of public schools and institutions of higher learning. 86 ALR2d 489.**

Appeal by plaintiff from judgment entered 23 February 1993 by Judge F. Fetzer Mills in Forsyth County Superior Court. Heard in the Court of Appeals 22 August 1994.

*Kennedy, Kennedy, Kennedy & Kennedy, by Harvey L. Kennedy, Harold L. Kennedy, III, and Annie Brown Kennedy, for plaintiff-appellant.*

*Robinson Maready Lawing & Comerford, L.L.P., by Robert J. Lawing and Jane C. Jackson, and Womble Carlyle Sandridge & Rice, by Allan R. Gitter, for defendants-appellees.*

WYNN, Judge.

On 30 November 1988, plaintiff, Barbara K. Phillips, applied for the position of Superintendent of the Winston-Salem/Forsyth County

Schools. Plaintiff was a semi-finalist for the position but defendant Winston-Salem/Forsyth County Board of Education (Board) selected defendant Dr. Larry D. Coble instead.

After Dr. Coble became superintendent he met with plaintiff who informed him of allegations regarding the conduct of Nelson Jessup. Mr. Jessup had been the interim superintendent. Plaintiff told Dr. Coble that Mr. Jessup may have been involved in burning down a school, was selling school furniture for personal profit, and used a school for sexual assignations. Dr. Coble asked the Board to hire a private investigator to explore these charges. The investigator did not uncover any evidence of improper activity.

In March 1990, Donna Oldham, communications officer for the Board, told Dr. Coble that plaintiff had tried to have his office broken into and searched for anything which might embarrass Dr. Coble. Ms. Oldham also told Dr. Coble that plaintiff had directed janitors to search his trash for such information. Ms. Oldham later met with Rudy Anderson, managing editor of the Winston-Salem *Chronicle*, a weekly newspaper, and discussed these allegations regarding plaintiff. Beaufort Bailey, the Board's Vice-Chairman, also met with Mr. Anderson and made similar allegations concerning plaintiff.

Plaintiff had an employment contract with the Board which expired on 30 June 1990. Dr. Coble created a reorganization plan for the school system in which the assistant superintendent positions were eliminated. The Board approved the reorganization plan and notified plaintiff by letter on 19 March 1990 that her contract would not be renewed.

The Winston-Salem *Chronicle* reported in its 29 March 1990 issue that the Board adopted a reorganization plan which did not include plaintiff. In addition the article stated:

> [T]he *Chronicle* has learned, through sources who wish to remain unidentified, that Mr. Coble's recommendation not to renew Dr. Phillips' contract had to do with her conduct after Dr. Eargle's resignation as superintendent and during the subsequent search for a new superintendent. Dr. Phillips had been one of the candidates vying for that job. She was not one of the finalists for the job.

> [Dr. Phillips] denied other allegations that she has made critical and unflattering public comments about Dr. Coble and other administration staff personnel. She denied allegations that at her

direction she has had janitors rummaging through the trash of Dr. Coble looking for anything that might put him in a bad light or that she ever tried to have Dr. Coble's office broken into for the purpose of getting information that might put him in a compromising position.

Plaintiff then brought this action against the Board and Dr. Coble for slander, libel, and wrongful discharge in violation of public policy and sought actual and punitive damages against defendants. The trial court granted defendants' motions for summary judgment as to defendant Dr. Coble and as to her claim for punitive damages against the Board. At the close of plaintiff's evidence the trial court granted defendant's motion for a directed verdict and entered judgment against plaintiff. From that judgment, plaintiff appeals.

Plaintiff first argues that the trial court erred by granting defendant's motion for a directed verdict as to plaintiff's defamation and wrongful discharge claims. A motion for a directed verdict by the defendant pursuant to N.C. Gen. Stat. § 1A-1, Rule 50(a), presents an identical question for trial and appellate courts: whether the evidence, considered in the light most favorable to the plaintiff and given every reasonable inference, is sufficient to submit to the jury. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E.2d 678 (1977); *Smith v. Pass*, 95 N.C. App. 243, 382 S.E.2d 781 (1989).

## I. Defamation Claim

[1] The term defamation covers two distinct torts, libel and slander. In general, libel is written while slander is oral. *Tallent v. Blake*, 57 N.C. App. 249, 291 S.E.2d 336 (1982). Libel *per se* is a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace. *Renwick v. News and Observer Pub. Co.*, 310 N.C. 312, 317, 312 S.E.2d 405, 409, *reh'g denied*, 310 N.C. 749, 315 S.E.2d 704, *cert. denied*, 469 U.S. 858, 83 L. Ed. 2d 121 (1984); *Flake v. Greensboro News Co.*, 212 N.C. 780, 195 S.E. 55 (1938). Slander *per se* is an oral communication to a third person which amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease. *Raymond U v. Duke University*, 91 N.C. App. 171, 371 S.E.2d 701, *disc. review*

PHILLIPS v. WINSTON-SALEM/FORSYTH COUNTY BD. OF EDUC.

[117 N.C. App. 274 (1994)]

*denied*, 323 N.C. 629, 374 S.E.2d 590 (1988); *Morris v. Bruney*, 78 N.C. App. 668, 338 S.E.2d 561 (1986). "[W]hen defamatory words are spoken with the intent that the words be reduced to writing, and the words are in fact written, the publication is both slander and libel." *Clark v. Brown*, 99 N.C. App. 255, 261, 393 S.E.2d 134, 137, *disc. review denied*, 327 N.C. 426, 395 S.E.2d 675 (1990); *Talent*, 57 N.C. App. at 251-2, 291 S.E.2d at 338.

Statements which would otherwise support a defamation action may be protected by a qualified privilege. *See Stewart v. Nation-Wide Check Corp.*, 279 N.C. 278, 182 S.E.2d 410 (1971). A qualified privilege exists when a communication is made:

(1) on subject matter (a) in which the declarant has an interest, or (b) in reference to which the declarant has a right or duty, (2) to a person having a corresponding interest, right, or duty, (3) on a privileged occasion, and (4) in a manner and under circumstances fairly warranted by the occasion and duty, right, or interest.

*Clark*, 99 N.C. App. at 262, 393 S.E.2d at 138; *Shreve v. Duke Power Co.*, 97 N.C. App. 648, 389 S.E.2d 444, *disc. review denied*, 326 N.C. 598, 393 S.E.2d 883 (1990). Whether the communication is privileged is a question of law unless the circumstances of the communication are in dispute which then makes it a mixed question of law and fact. *Stewart*, 279 N.C. at 284, 182 S.E.2d at 414 (quoting *Ramsey v. Cheek*, 109 N.C. 270, 13 S.E. 775 (1891)). The existence of the privilege creates a presumption that the communication was made in good faith and without malice. To rebut this presumption, the plaintiff must show actual malice. *Shreve*, 97 N.C. App. at 651, 389 S.E.2d at 446; *Davis v. Durham City Schools*, 91 N.C. App. 520, 372 S.E.2d 318 (1988).

In the instant case, we find that Ms. Oldham's statements to Dr. Coble regarding plaintiff were entitled to a qualified privilege. Ms. Oldham, as the Board's communications officer, had an interest in reporting any conduct to Dr. Coble which could adversely affect the school system. The statements were made in a private meeting. Plaintiff has failed to show actual malice by Ms. Oldham, therefore, a directed verdict was proper on this issue.

[2] Statements made by Ms. Oldham to Mr. Anderson, however, would not be entitled to a qualified privilege. Mr. Anderson testified to the following:

Q.   And on the document that has been marked as Plaintiff's Exhibit Number 3, do you see anywhere in that document a reference where—where she [Ms. Oldham] was asked about Dr. Phillips going through Coble's trash and going through—breaking into his office? Do you see that?

A.   Okay.

. . .

A.   Yes. About going—what did—going through Coble's trash and going through things in his office, yes.

Q.   Okay. What was her statement to you when you asked her about that?

. . .

A.   "You'd be surprised about what went on around here. That's no big deal. I told you I don't want to be involved in this. Get your answers someplace else."

Taking this testimony in the light most favorable to plaintiff, we conclude that Ms. Oldham's statement to Mr. Anderson is not defamatory as a matter of law. The trial court properly granted defendant a directed verdict with regard to the statements made by Ms. Oldham.

[3]   Plaintiff next argues that defendant Board is liable for similar statements made by Mr. Bailey to Mr. Anderson. We disagree. The Board has waived its governmental immunity pursuant to N.C. Gen. Stat. § 115C-42 by purchasing liability insurance. The statute provides that the waiver applies to "damage by reason of death or injury to person or property caused by the negligence or tort of any agent or employee of such board of education when acting within the scope of his authority or within the course of his employment." N.C. Gen. Stat. § 115C-42 (1994). We conclude that Mr. Bailey was not acting as an agent of the Board when he made the statements concerning plaintiff to Mr. Anderson. Therefore, we hold that the Board is not vicariously liable for Mr. Bailey's conduct and that the trial court· properly granted a directed verdict on this issue.

## II. Wrongful Discharge Claim

Plaintiff next argues that the trial court erred by granting a directed verdict as to her wrongful discharge claim. We disagree. Assuming *arguendo* that plaintiff was discharged by the Board, she has not presented sufficient evidence that this discharge violated the public pol-

icy of North Carolina. *See Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 416 S.E.2d 166 (1992); *Coman v. Thomas Mfg. Co., Inc.*, 325 N.C. 172, 381 S.E.2d 445 (1989). The trial court properly directed a verdict on this issue.

We have reviewed plaintiff's other assignments of error and find them to be without merit. Therefore, the judgment of the trial court is

Affirmed.

Judges JOHNSON and ORR concur.